i

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, | Civil Case No. 0:25-cv-01353-PJS-DJF |
| Plaintiff, | |
| v. | |
| JOHN DOE subscriber assigned IP address 73.242.101.143, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. FACTS ................................................................................................................................ 2

   A. Online Infringement Poses a Serious Threat to Plaintiff ..................................... 2

   B. Plaintiff Brings Its Litigation in Good Faith ........................................................ 3

III. STANDARD ..................................................................................................................... 4

IV. ARGUMENT .................................................................................................................... 6

   A. There Is Good Cause for this Court to Grant Plaintiff's

   Motion for Leave to Serve Its Subpoena. .................................................................. 6

      1. Plaintiff's Complaint Makes a Prima Facie Claim for

      Direct Copyright Infringement. ........................................................................ 6

      2. Plaintiff Identifies the Limited and Specific Information

      Its Subpoena Seeks That Is Necessary to Serve Doe Defendant. ................................. 7

      3. There Are No "Alternative Means" to Uncover

      Doe Defendant's True Identity. ........................................................................ 8

      4. The Subpoenaed Information Is Necessary to Advance

      Plaintiff's Infringement Claim. ......................................................................... 9

      5. Defendant's Minimum Privacy Interest Is Substantially

      Outweighed by Plaintiff's Interest in Protecting Its

      Copyrights from Mass BitTorrent Infringers. ............................................................ 10

   B. Protective Order ................................................................................................... 11

V. CONCLUSION ................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ................................................................................................ 7
*Arista Records, L.L.C. v. Does 1-54*,
  No. 4:08-CV-1289 (CEJ), 2008 WL 4104563 (E.D. Mo. Aug. 29, 2008) .............................. 9
*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) .................................................................................................... 5
*Empirical Foods, Inc. v. Primus Builders, Inc.*,
  No. 8:19cv457, 2020 WL 5064220 (D. Neb. Aug. 27, 2020) ................................................. 6
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ................................................................................................................ 6
*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881, 203 L. Ed. 2d 147 (2019) ............................................................................... 7
*In re Charter Commc'ns Inc., Subpoena Enf't Matter*,
  393 F.3d 771 (8th Cir. 2005) ............................................................................................... 4, 9
*John Wiley & Sons, Inc. v. Doe*,
  284 F.R.D. 185 (S.D.N.Y. 2012) ............................................................................................. 8
*Killer Joe Nevada, LLC v. Does 1-20*,
  807 F.3d 908 (8th Cir. 2015) .................................................................................................. 4
*Manos v. Fed. Bureau of Prisons*,
  No. 18-cv-0427 (PJS/HB), 2019 WL 4394882 (D. Minn. Aug. 22, 2019) ............................. 5
*Minnetonka Moccasin Co., Inc. v. Does*,
  No. 22-cv-87 (PJS/TNL), 2022 WL 1055746 (D. Minn. Apr. 8, 2022) .............................. 4, 5
*Morbitzer v. Doe*,
  No. 21-cv-2038 (PJS/HB), 2021 WL 4273019 (D. Minn. Sept. 21, 2021) ........................ 9, 10
*NCS Pearson, Inc. v. Does*,
  No. 20-cv-594 (SRN/ECW), 2020 WL 6581122 (D. Minn. Nov. 10, 2020) ...................... 6, 9
*Paisley Park Enterprises*,
  2018 WL 6567828 (D. Minn. Dec. 13, 2018) ....................................................................... 11
*Paisley Park Enterprises, Inc. v. Ziani*, No. 18-cv-2556 (DSD/TNL), 2018 WL 6567828 (D.
  Minn. Dec. 13, 2018) .......................................................................................................... 4, 7
*Raw Films, Ltd. v. John Does 1-15*,
  No. CV 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012) ............................................. 8
*Strike 3 Holdings LLC v. Doe*,
  No. 18-768 (DSD/FLN), 2018 WL 1924455 (D. Minn. Apr. 24, 2018) ................................. 6
*Strike 3 Holdings, LLC v. Doe*,
  329 F.R.D. 606  (D. Minn. 2018) ............................................................................................ 6

*Strike 3 Holdings, LLC v. Doe*,
   330 F.R.D. 552 (D. Minn. 2019) ................................................................................ 5, 10
*Strike 3 Holdings, LLC v. Doe*,
   337 F. Supp. 3d 246 (W.D.N.Y. 2018) .............................................................................. 6
*Strike 3 Holdings, LLC v. Doe*,
   964 F.3d 1203 (D.C. Cir. 2020) ..................................................................................... 4, 5
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-14138 (MAS)(LHG) (D.N.J. Jun. 27, 2019) .......................................................... 6
*Strike 3 Holdings, LLC v. Do*e,
   No. 18-cv-0771 (DWF/HB), 2018 WL 2278110, (D. Minn. May 18, 2018) .................... 11
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-cv-778 (PJS/HB), 2018 WL 2278111 (D. Minn. May 18, 2018) ............................ 4
*Strike 3 Holdings, LLC v. Doe*,
   No. 20-5123-KSM, 2020 WL 6342770 (E.D. Pa. Oct. 29, 2020) ...................................... 5
*Strike 3 Holdings, LLC v. Doe*,
   No. 3:17-cv-1680 (CSH), 2017 WL 5001474 (D. Conn. Nov. 1, 2017) ............................. 9
*Strike 3 Holdings, LLC v. John Doe*,
   No. 18-cv-774 (DWF/DTS), 2018 WL 4210202 (D. Minn. Sept. 4, 2018) ........... 5, 6, 8, 9, 10
*United States v. Horton*,
   863 F.3d 1041 (8th Cir. 2017) ........................................................................................ 11
*United States v. Stults*,
   575 F.3d 834 (8th Cir. 2009) .......................................................................................... 10
*United States v. Suing*,
   712 F.3d 1209 (8th Cir. 2013) ........................................................................................ 10
*United States v. Wheelock*,
   772 F.3d 825 (8th Cir. 2014) .......................................................................................... 11

**Statutes**

17 U.S.C. § 106(1) .................................................................................................................... 7
17 U.S.C. § 410(c) .................................................................................................................... 7
47 U.S.C. § 551(c)(1) .............................................................................................................. 11
47 U.S.C. § 551(c)(2)(B) ..................................................................................................... 6, 11

**Other Authorities**

*Beginner's Guide to Internet Protocol (IP) Addresses* at p. 4, available at
  https://www.icann.org/en/system/files/files/ip-addresses-beginners-guide-04mar11-en.pdf.;
  *American Registry for Internet Numbers Number Resource Policy Manual* at 4.2, available at
  https://www.arin.net/policy/nrpm.html#four2 ........................................................................ 8
Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The
  Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United
  States House Of Representatives, (January 2011) at
  http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-
  11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-
  pornography-and-other-internet-crimes.pdf .............................................................................. 2

**Rules**

Fed. R. Civ. P. 26(d)(1) ................................................................................................................... 1

## **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

Plaintiff Strike 3 Holdings, LLC, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 26(d)(1), respectfully requests this Court grant its request for leave to serve a third-party subpoena prior to a Rule 26(f) conference, as set forth below.

### I. **INTRODUCTION**

Plaintiff Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") is the owner of original, award-winning motion pictures featured on its brand's subscription-based adult websites. Strike 3's success has led users on the Internet to illegally infringe its works on a very large scale. Indeed, Strike 3's motion pictures are among the most infringed content in the world. *See* Declaration of Jorge Arco ("Arco Decl.") at ¶ 31.

Strike 3, using its proprietary forensic software, VXN Scan and the Cross Reference Tool, monitored and detected the infringement. *See id.* at ¶ 47. This software recorded Defendant's IP address illegally distributing Strike 3's motion pictures. *See* Declaration of Patrick Paige ("Paige Decl.") at ¶¶ 16–22. This IP address is assigned to Defendant by his or her Internet Service Provider ("ISP"), which is the only party with the information necessary to identify Defendant by correlating the IP address with John Doe's identity. Paige Decl. at ¶ 28. As a result, Plaintiff now seeks leave to serve limited, immediate discovery on Defendant's ISP, Comcast Cable Communications, LLC (Comcast Cable), so that Plaintiff may learn Defendant's identity, investigate Defendant's role in the infringement, and effectuate service. Further impelling expediency, Defendant's ISP only maintains the internal logs of the requested information for a brief period.[1]

---

[1] *See, e.g.*, Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at

1

Plaintiff seeks leave of Court to serve a Rule 45 subpoena on Defendant's ISP. This subpoena demands only the true name and address of Defendant and Plaintiff will only use this information to prosecute the claims asserted in its Complaint. Without this information, Plaintiff cannot serve Defendant or pursue this lawsuit to protect its copyrights.

## II. FACTS

### A. Online Infringement Poses a Serious Threat to Plaintiff

Strike 3 holds title to the intellectual property associated with the *Blacked*, *Blacked Raw*, *MILFY*, *Slayed*, *Tushy*, *Tushy Raw*, *Vixen*, and *Wifey* adult brands (the "Brands"), including the copyrights to each of the motion pictures distributed through the Brands' sites and the trademarks to each of the Brand's names and logos. Arco Decl. at ¶ 14. Strike 3 is owned entirely by General Media Systems ("GMS") and has existed since 2015. *Id.* at ¶ 9.

Although it started out small, the Brands' websites now host approximately 15 million visitors each month. *Id.* at ¶ 15. This success is no fluke. Strike 3's philosophy has always been to pay artists and models an amount above that being paid by other companies, focusing on delivering superior quality films. *Id.* at ¶¶ 17–18. Moreover, Strike 3's motion pictures are known for having some of the highest production budgets of any in the adult industry. *Id.* at ¶ 20.

Because of this commitment to quality, the websites for the Brands have a subscriber base that is one of the highest of any adult sites in the world. *Id.* at ¶ 21. Strike 3 is also frequently the number one seller of adult DVDs in the United States. *Id.* at ¶ 22. Finally, Strike 3's content is licensed throughout the world, including by most major cable networks. *Id.* at ¶ 23. This success

---

http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf, stating: "Some [ISP] records are kept for weeks or months; others are stored very briefly before being purged."

2

has led to numerous awards being bestowed upon Strike 3, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography."  *Id.* at ¶ 24.

Unfortunately, piracy is a major threat and causes tremendous damage to Strike 3, and Strike 3 "can compete in the industry, but [it] cannot compete when [its] content is stolen."  *Id.* at ¶ 27. To continue to provide value for members, exciting and inspiring projects for adult performers, and to continue to create top paying jobs and growth in the adult community, Strike 3 must protect its copyrights.  *Id.* at ¶ 40.

### B. Plaintiff Brings Its Litigation in Good Faith

Strike 3 is mindful of the nature of the litigation and its goal is to not disclose publicly the choices that people make regarding the content they wish to enjoy.  Moreover, Strike 3 does not seek to force anyone to settle unwillingly, especially anyone who is innocent.  *Id.* at ¶ 34. Therefore, Strike 3 only files strong cases against extreme infringers.  *Id.* at ¶ 35.  Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but they are also large scale unauthorized distributors of Strike 3's content.  *Id.*  Strike 3 does not seek settlements unless initiated by a defendant or a defendant's counsel.  *Id.* at ¶ 36.  Additionally, Strike 3 does not send demand letters.  *Id.*

Finally, although certainly Strike 3 does not believe anyone should be embarrassed about enjoying Strike 3's works (they just need to pay for that right, not steal it), Strike 3 respects the desire of defendants to keep private their choices regarding the content they choose to enjoy. Accordingly, Strike 3 has a policy to: (1) enter into confidentiality agreements with defendants to facilitate resolution of a case; and (2) stipulate to requests by defendants to the entry of orders in litigation to maintain the confidentiality of a defendant's identity.  Thus, Strike 3 is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so, and to enforce its rights in a way that is mindful of a defendant's privacy interests.

Strike 3 is a successful adult entertainment company that makes nearly all its revenue from sales of subscriptions, DVDs and licenses. *Id.* at ¶ 38. Strike 3's goal is to deter piracy (and seek redress for its harmful consequences) and direct those who infringe content to the avenue of legitimately acquiring access to Strike 3's works. *Id.*

### III.   STANDARD

"Expedited discovery for purposes of serving a complaint is particularly relevant in copyright cases involving file sharing because 'as a practical matter, copyright owners cannot deter unlawful peer-to-peer file transfers unless they learn the identities of persons engaged in that activity.'" *Paisley Park Enterprises, Inc. v. Ziani*, No. 18-cv-2556 (DSD/TNL), 2018 WL 6567828, at *3 (D. Minn. Dec. 13, 2018) (quoting *In re Charter Commc'ns Inc., Subpoena Enf't Matter*, 393 F.3d 771, 775 n. 3 (8th Cir. 2005)); *Killer Joe Nevada, LLC v. Does 1-20*, 807 F.3d 908, 912 (8th Cir. 2015) ("A plaintiff . . . *may* properly sue 'John Doe' to ascertain the ISP subscriber.") (citation omitted).

Although parties generally "may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . early discovery . . . is appropriate, particularly when the plaintiff cannot identify the defendant without such discovery." *Minnetonka Moccasin Co., Inc. v. Does*, No. 22-cv-87 (PJS/TNL), 2022 WL 1055746, at *2 (D. Minn. Apr. 8, 2022) (citing *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-778 (PJS/HB), 2018 WL 2278111, at *3 (D. Minn. May 18, 2018)); *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207 (D.C. Cir. 2020) ("In cases involving as-yet-unknown defendants, in which the plaintiff cannot serve its complaint—much less confer with the defendant—without obtaining identifying information from a third party, 'the only potential avenue for discovery is [a court order under] Rule 26(d)(1).'") (citation omitted).

4

"When a party moves for early discovery, courts within this District generally apply a 'good cause' standard."[2] *Minnetonka Moccasin*, 2022 WL 1055746 at *2 (collecting cases). In BitTorrent matters, courts generally look to the following factors:

> (1) the concreteness of the plaintiff's showing of a prima facie claim of actionable harm, (2) the specificity of the discovery request, (3) the absence of alternative means to obtain the subpoenaed information, (4) the need for the subpoenaed information to advance the claim, and (5) the objecting party's expectation of privacy.

*Strike 3 Holdings, LLC v. Doe*, 330 F.R.D. 552, 556 (D. Minn. 2019) (citing *Strike 3 Holdings, LLC v. John Doe*, No. 18-cv-774 (DWF/DTS), 2018 WL 4210202 (D. Minn. Sept. 4, 2018) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010)); *accord Manos v. Fed. Bureau of Prisons*, No. 18-cv-0427 (PJS/HB), 2019 WL 4394882, at *1–2 (D. Minn. Aug. 22, 2019), *report and recommendation adopted*, No. 18-cv-0427 (PJS/HB), 2019 WL 4393999 (D. Minn. Sept. 13, 2019). "Motions for expedited discovery are typically granted if the requests are narrowly tailored."[3] *Empirical Foods, Inc. v. Primus Builders, Inc.*, No. 8:19cv457, 2020 WL

---

[2]   As noted by Court of Appeals for the District of Columbia, the Federal Rules were amended in 2015 to remove the "good cause" standard "and replaced it with the overarching relevance and proportionality standard[.]" *Strike 3 Holdings*, 964 F.3d at 1207 n.2. Nevertheless, courts "have continued to look to the good cause factors in analyzing motions for expedited discovery." *See Strike 3 Holdings, LLC v. Doe*, No. 20-5123-KSM, 2020 WL 6342770, at *1 (E.D. Pa. Oct. 29, 2020); *Minnetonka Moccasin*, 2022 WL 1055746 at *2 (collecting cases). Strike 3 presents the traditional good cause standard here because several of those factors address the relevance and proportionality of Plaintiff's request, and thus discovery is appropriate under either standard.

[3]   In full candor to the Court, one District Judge has upheld an order denying early discovery, although Strike 3 prevailed on separate appeals of similar orders. *Compare Strike 3 Holdings, LLC v. Doe*, No. 18-774 (DWF/DTS), ECF No. 13 (D. Minn. Apr. 30, 2018) rev'd, 2018 WL 4210202, at *2 (D. Minn. Sept. 4, 2018), *and Strike 3 Holdings, LLC v. Doe*, 329 F.R.D. 606, 607 (D. Minn. 2018), *rev'd*, 330 F.R.D. 552 (D. Minn. 2019) *with*, *Strike 3 Holdings LLC v. Doe*, No. 18-768 (DSD/FLN), 2018 WL 1924455, at *2 (D. Minn. Apr. 24, 2018) *appeal denied*, No. 18-768 (DSD/FLN), ECF No. 19 (D. Minn. Jul. 30, 2018). The latter "was affirmed on appeal, but in a single sentence that relied entirely on deference to the magistrate judge's discretion." *Strike 3 Holdings, LLC v. Doe*, No. 18-14138 (MAS)(LHG), ECF No. 15, at *2 (D.N.J. Jun. 27, 2019) (denying motion to quash); *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 256 (W.D.N.Y.

5

5064220, at *16 (D. Neb. Aug. 27, 2020) (collecting cases); *see NCS Pearson, Inc. v. Does*, No. 20-cv-594 (SRN/ECW), 2020 WL 6581122, at *6–7 (D. Minn. Nov. 10, 2020).

## IV. ARGUMENT

### A. There Is Good Cause for this Court to Grant Plaintiff's Motion for Leave to Serve Its Subpoena.

#### 1. *Plaintiff's Complaint makes a prima facie claim for direct copyright infringement.*

"Plaintiff has stated an actionable claim for copyright infringement." *Strike 3 Holdings, LLC, v. Doe*, No. 18-774 (DWF/DTS), 2018 WL 4210202, at *2 (D. Minn. Sept. 4, 2018). To make a *prima facie* claim[4] for copyright infringement, Plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff's Complaint accomplishes this, stating: (1) "Plaintiff is the owner of the Works, which [are] an original work of authorship"; (2) "[d]efendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol"; and (3) "[a]t no point in time did Plaintiff authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise." *See* Complaint at ¶¶ 52–54.

Plaintiff owns a valid copyright in the Works, which are registered with the United States Copyright Office. *See* 17 U.S.C. § 410(c); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com*,

---

2018) ("[T]he overwhelming majority of opinions in similar cases, including those from the District of Minnesota, have granted leave to serve a third-party subpoena pursuant to 47 U.S.C. § 551(c)(2)(B), so the decision relied on by Defendant has carried little weight even within its own district.").

[4]   "Generally, prima facie support is the establishment of a legally required rebuttable presumption or where a party's production of enough evidence allows the fact-trier to infer the fact at issue and rule in the party's favor." *NCS Pearson,* 2020 WL 6581122 at *6 (citations and internal quotations omitted).

*LLC*, 139 S. Ct. 881, 888, 203 L. Ed. 2d 147 (2019); *see also* Complaint at ¶¶ 46, 49. Plaintiff's prima facie allegations of infringement are attested to by Mr. Arco, who used Plaintiff's forensic software to track and record BitTorrent activity. *See, generally,* Arco Decl. Finally, each digital file has been verified to be a copy of one of Plaintiff's copyrighted Works. *See* Declaration of Susan B. Stalzer ("Stalzer Decl.").

Plaintiff has also made a plausible prima facie showing of "copying." "'The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights' described in § 106." *A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1013 (9th Cir. 2001). Plaintiff's Complaint alleges that Doe not only downloaded Plaintiff's works over the BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to the BitTorrent swarm. *See id.* § 106(3); *see also* Complaint at ¶ 47. "Alone, these allegations would be sufficient to establish a prima facie case of copyright infringement." *Paisley Park Enterprises, Inc. v. Ziani*, No. 18-cv-2556 (DSD/TNL), 2018 WL 6567828, at *3 (D. Minn. Dec. 13, 2018).

### 2. *Plaintiff identifies the limited and specific information its subpoena seeks that is necessary to serve Doe defendant.*

Plaintiff's subpoena is limited and only "seeks concrete and narrow information: the name and address of the subscriber associated with [Doe Defendant's] IP address[.]" *John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012); *Strike 3 Holdings*, 2018 WL 4210202 at *2 ("Plaintiff's discovery request is specific because it seeks only Defendant's name and address."). "The subpoena is specific enough to give rise to a reasonable likelihood that information facilitating service upon proper defendants will be disclosed if the ISPs comply." *Raw Films, Ltd. v. John Does 1-15*, No. CV 11-7248, 2012 WL 1019067, at *7 (E.D. Pa. Mar. 26, 2012) (denying motion to quash subpoena). "[A]lthough the provision of this information may not

7

directly identify the proper defendants, it is sufficiently tailored to lead to the identification of those individuals." *Id.* The second factor weighs heavily in Plaintiff's favor.

### 3.     *There are no "alternative means" to uncover Doe Defendant's true identity.*

"Third, there are no alternative ways to obtain the information" sought in early discovery. *Strike 3 Holdings*, 2018 WL 4210202 at *2. At this early stage in litigation, Plaintiff has a limited view into Defendant's true identity, only having access to the offending IP address. *See John Wiley & Sons*, 284 F.R.D. at 190 ("BitTorrent software is 'largely anonymous' except insofar as it requires a user to broadcast the user's IP address."). People using the internet are anonymous to the public, but the ISPs responsible for assigning any given IP address "know who an address is assigned to and how to get in contact with them."[5] ISPs' records "are the only available evidence that allows us to investigate who committed crimes on the Internet. They may be the only way to learn, for example, that a certain internet address was used by a particular human being to engage in or facilitate a criminal offense."[6]

"Plaintiffs are unable to obtain the subscribers' names by any other means, and without this information the case cannot proceed." *Arista Records, L.L.C. v. Does 1-54*, No. 4:08-cv-1289 (CEJ), 2008 WL 4104563, at *1 (E.D. Mo. Aug. 29, 2008). That "information cannot be obtained through any publicly available source based on the [Plaintiff's] current knowledge of the subscriber[.]" *See Morbitzer v. Doe*, No. 21-cv-2038 (PJS/HB), 2021 WL 4273019, at *4 (D. Minn. Sept. 21, 2021) (citation omitted).

---

[5]     *Beginner's Guide to Internet Protocol (IP) Addresses* at p. 4, available at https://www.icann.org/en/system/files/files/ip-addresses-beginners-guide-04mar11-en.pdf.; *American Registry for Internet Numbers Number Resource Policy Manual* at 4.2, available at https://www.arin.net/policy/nrpm.html#four2.

[6]     Statement from Jason Weinstein, n.2, *supra*.

"Defendant's ISP . . . is the only entity that can correlate the IP address to its subscriber and identify Defendant as the person assigned the IP address . . . during the time of the alleged infringement." *Strike 3 Holdings, LLC v. Doe*, No. 3:17-cv-1680 (CSH), 2017 WL 5001474, at *4 (D. Conn. Nov. 1, 2017) (citation omitted)*; In re Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771, 774 (8th Cir. 2005) ("Only the ISP . . . can link a particular IP address with an individual's name and physical address.").

"Strike 3 cannot learn the subscriber's identity without the subpoenaed information[.]" *Strike 3 Holdings*, 2017 WL 5001474 at *4; *see NCS Pearson*, 2020 WL 6581122 at *7. "Because the information regarding the identity of the IP subscriber is available only for a limited time, the plaintiffs may lose the opportunity to assert their rights if they are not allowed immediate discovery." *Arista Records,* 2008 WL 4104563 at *1. Thus, this factor also weighs in Plaintiff's favor.

### 4. The subpoenaed information is necessary to advance Plaintiff's infringement claim.

"Fourth, without the information on Defendant's identity, the case cannot proceed." *Strike 3 Holdings*, 2018 WL 4210202 at *2. As previously emphasized, Plaintiff cannot properly serve Doe Defendant without first obtaining the subscriber's identity from his or her ISP. "The information sought by [Plaintiff] is necessary for [Plaintiff] to identify who should and should not be a party to this action." *Kennedy v. ITV Direct, Inc.*, No. 8-6244 (ADM/JSM), 2009 WL 10678523, at *3 (D. Minn. Jan. 8, 2009) (citing *Arista Records,* 2008 WL 4104563 at *1).

"[A]s a practical matter, copyright owners cannot deter unlawful peer-to-peer file transfers unless they can learn the identities of persons engaged in that activity." *Morbitzer*, 2021 WL 4273019 at *3. Additionally, even if the subscriber is not the infringer, "[i]t is also plausible that the subscriber would, at least, know who had access to his or her IP address. Without this

9

information, Strike 3 cannot hope to identify the Defendant, and cannot vindicate its copyrights." *Strike 3 Holdings*, 330 F.R.D. at 556. "Thus, identifying and serving the alleged infringers is the only method through which Plaintiff can protect its copyright interests." *Canal St. Films v. Does 1-22*, No. 1:13-cv-0999, 2013 WL 1775063, at *3 (M.D. Pa. Apr. 25, 2013).

### 5. *Defendant's minimum privacy interest is substantially outweighed by Plaintiff's interest in protecting its copyrights from mass BitTorrent infringers.*

Finally, "Defendant's expectation of privacy is outweighed by Plaintiff's right to use the judicial process to pursue its copyright claims." *Strike 3 Holdings*, 2018 WL 4210202 at *2. "Specifically, judges in this District have concluded in the past that a subscriber has minimal Fourth Amendment-protected privacy in their contact information disclosed to an internet service provider, and that minimal privacy interest does not overcome the plaintiff's right to learn that information to pursue a claim against the subscriber provided good cause has been shown."[7] *Morbitzer*, 2021 WL 4273019 at *4.

"Likewise, though civil subpoenas issued to cable operators are subject to the provisions of the [Cable Communications Policy Act of 1984 ("CPA")], that [A]ct also offers little protection

---

[7] The Eighth Circuit has consistently held that subscribers do not possess a privacy interest in their IP address, particularly if that individual has used a peer-to-peer software like BitTorrent. *See*, *e.g.*, *United States v. Stults*, 575 F.3d 834, 842–43 (8th Cir. 2009) ("Several federal courts have rejected the argument that an individual has a reasonable expectation of privacy in his or her personal computer when file-sharing software, such as LimeWire, is installed.") (collecting cases); *United States v. Suing*, 712 F.3d 1209, 1213 (8th Cir. 2013) (finding defendant lacked an expectation of privacy when he "chose to share pornographic files via a peer-to-peer network."). "With [the ISP] in possession of his subscriber data, [Defendant] cannot claim a reasonable 'expectation of privacy in [the] acquisition of his subscriber information, including his IP address and name from third-party service providers.'" *United States v. Wheelock*, 772 F.3d 825, 828–29 (8th Cir. 2014) (finding "no reasonable expectation of privacy in the subscriber information") (collecting cases); *see also United States v. Horton*, 863 F.3d 1041, 1046 (8th Cir. 2017) ("A defendant's publicly available information may not be entitled to Fourth Amendment protection.").

to Defendant[] here." *Paisley Park Enterprises*, 2018 WL 6567828 at *6 (D. Minn. Dec. 13, 2018). "While the CPA prohibits the sharing of 'personally identifiable information; absent a subscriber's consent, 47 U.S.C. § 551(c)(1), the act also allows for disclosure of that information when made pursuant to a court order and the service provider notifies the subscriber." *Id.* (citing 47 U.S.C. § 551(c)(2)(B)). Thus, all five factors weigh in favor of finding good cause of early discovery.

### B. Protective Order

In some BitTorrent cases involving adult content, courts have found it appropriate to issue a protective order establishing procedural safeguards such as allowing a defendant to proceed anonymously. *See*, *e.g.*, *Strike 3 Holdings, LLC v. Do*e, No. 18-cv-0771 (DWF/HB), 2018 WL 2278110, at *5 (D. Minn. May 18, 2018) ("[T]he Court can craft a limited protective order pursuant to Federal Rule of Civil Procedure 26(c) to protect an innocent ISP subscriber and to account for the sensitive and personal nature of the subject matter of this lawsuit."). Strike 3 respectfully encourages the Court to establish such procedures here, should the Court find it appropriate.

### V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant its request for leave to serve a third-party subpoena to Doe Defendant's ISP prior to a Rule 26(f) conference, as set forth below.

Dated: 04/17/2025

    Respectfully submitted,

    By: */s/ Jeremy J. Thompson*
    **Jeremy J. Thompson**
    The Law Office of Jeremy J. Thompson PLLC
    5200 Willson Road, Suite 150
    Edina, MN 55424
    (952) 952-1883 (ph)
    (952) 952-1884 (fax)
    Email: jeremy@jthompson.law